This case is another in a series of "bad faith" cases which this Court has considered in the past few years, and points out once again that the insured was allowed to go to the jury on the bad faith claim, even though there were conflicts in the evidence on the breach of contract claim, the issue of liability was still being litigated, and the liability of the insurer to pay was not determined until the jury returned *Page 811 
a verdict on the contract claim. Here, the majority compounds its error by holding that the insured was entitled to a directed verdict on the contract claim, even though no requestwas made that the trial court grant a directed verdict on thecontract claim. Even more disturbing is the fact that the majority, in one part of the opinion, actually states that there was a dispute on the contract claim. The opinion, in part, reads:
 "The parties in this case stipulated that there was in fact a contract. The disputed issue was whether there was a breach of that contract by Continental's failure to pay, that is, whether Kountz's injury was covered by the insurance policy. This question turned on whether Kountz's injury occurred to `sound' teeth as required by the policy." (Emphasis added.)
Nevertheless, the majority not only finds that a dispute existed on the contract claim, but then disregards that finding and exempts plaintiff from making a motion for a directed verdict, and further finds that this is not a "normal case," thereby allowing plaintiff to recover under the principles announced in Aetna Life Cas. Ins. Co. v. Lavoie, [Ms. 82-426, December 7, 1984] (Ala. 1984). This use of the appellation "normal case," although it is lifted from one of this Court's cases, sets up a difficult test to apply. It is much like a court having to say that while "obscenity" cannot be defined, "I know it when I see it." To apply such principles to contract law, where the rule of "expectancy of the parties" is the polestar, seems unnecessary and very difficult to apply because of its subjectivity. These "bad faith" cases, unfortunately, in my opinion, fail to give to the bench and bar some settled principles to guide them in determining when, and under what circumstances, the tort can be established. That is the reason I consistently dissented, until I joined every member of the Court in National Security Fire and Casualty Co. v. Vintson,454 So.2d 942 (Ala. 1984), in which this Court concluded that a plaintiff had a very heavy burden in establishing a bad faith failure to pay, and that that burden was to show that the insurer, to quote from Vintson, "had no legal or factual defense to the insurance claim." The Vintson test at least provided a more objective standard which trial judges, lawyers, and appellate judges could apply. Here, the Court followsLavoie, which is diametrically opposed to Vintson.
There is another reason why the "bad faith" claim should not have been sent to the jury in this case. Plaintiff, by failing to request a directed verdict on the contract claim, necessarily left to the jury the factual determination of whether there was a contractual duty on the insurer to pay the claim. Even assuming we could waive the request for a directed verdict, I must respectfully disagree with the majority that the plaintiff was entitled to a directed verdict on the contract claim, as I have already pointed out. In fact, the majority opinion concedes, in one portion of the opinion, that there was a "disputed issue . . . whether Kountz's injury was covered by the insurance policy."
By dissenting in this case, and in others presented to this Court, I may appear to believe a plaintiff in a case such as the present one should be limited to his usual contract damages, but I have no such views, and have never entertained them. The Chief Justice, in his dissent in Lavoie, using a principle which I have long held to be the law, has suggested what I believe would be a sound rule of law to establish in these insurance contract cases. He suggested that this Court should adopt a rule that would restrict the cause of action, in situations such as exist here, to one sounding in contract, butexpand the contractual damages rules for non-commercialinsurance contracts. To me, that would be a just and fair rule which could be easily applied, and would be a rule this Court could unanimously adopt. Of course, the Legislature is the body normally relied upon to correct any ills which might exist in the insurance industry regarding payment *Page 812 
of insurance claims,[1] but in the absence of legislation, I would favor a rule of law which would allow the recovery of consequential damages, including reasonable attorneys' fees, when a party is forced to go to court to establish his claim under an insurance policy.
The failure of insurers to promptly pay what policyholders consider just claims is of great public concern. That concern is evidenced by the proliferation of cases in which policyholders seek not only redress under the contract, but also punitive damages under a "bad faith" theory, and juries are responding with verdicts of such magnitude that this Court has seen fit to requite remittiturs.[2]
As I have already stated, in our scheme of government, policy questions like this, especially since they involve the heavily regulated insurance industry, should properly be addressed by the Legislature, but the Legislature has not acted.[3] *Page 813 
Another concern of mine is the fact that because of this Court's adoption of the "bad faith" tort, there very well may be instances when insurance companies pay claims which factually should be denied; nevertheless, the company opts to pay rather than face the possibility of a lawsuit. If those instances do occur, then premiums for all other policyholders necessarily rise to offset these added costs. On the other hand, there no doubt are instances when companies require policyholders to resort to a court suit, even though the factual basis for denial of a claim is questionable. The fairest rule, it would appear to me, in view of these two policy considerations, would be one which would allow any party to a non-commercial insurance contract, who is forced to go to court in order to recover his contract claim to recover his consequential damages as well, including reasonable attorneys' fees.
In summary, I believe the judicially created tort of "bad faith" has serious policy ramifications which could and should be addressed by the legislative body of our government, I, nevertheless, feel that, in some cases, damages in addition to those provided for by the contract are necessary to make the policyholder whole.
Consequently, I would apply the rule which I believe would be just in this case and would reverse the judgment awarding punitive damages, but would remand the cause to the circuit court for a determination of the consequential damages which the plaintiff suffered as a result of the breach.
[1] The Legislature responded to a policy concern when municipal immunity was stricken, Code 1975, §§ 11-93-1 through 11-93-3, and also when public policy indicated the necessity for a law to address the proliferation of medical malpractice claims, Code 1975, § 27-26-2.
[2] In these cases, there has been no uniformity in the amount of damages awarded, but this Court has not been uniform either in requiring remittiturs. Cf. Gulf Atlantic Life Ins. Co. v.Barnes, 405 So.2d 916 (Ala. 1981), and Lavoie, supra.
[3] For at least one state, commentators have proposed a statute. K. Harvey and T. Wiseman, First Party Bad Faith: Common LawRemedies and a Proposed Legislative Solution, 72 Ky.L.J. 141 (1983-84):
 "AN ACT relating to first party insurance claims. Be it enacted by the General Assembly of the Commonwealth of Kentucky:
 SECTION 1. A NEW SECTION OF SUBTITLE — OF KRS CHAPTER 304 IS CREATED TO READ AS FOLLOWS:
 "(1) The desire to provide a fair and equitable means of resolving disputes that arise between insurers and insureds requires that the statutory mechanism herein be adopted to effect the following purposes:
 "(a) To encourage insurers to conduct reasonable investigations of claims by its insureds;
 "(b) To promote prompt, fair and equitable settlements of claims in which liability has become reasonably clear;
 "(c) To deter insurers from unreasonably delaying or denying benefits due their insureds under contracts of insurance;
 "(d) To provide the insured the benefit of his bargain when he is compelled to bring a cause of action against his insurer to enforce the terms of a valid insurance contract;
 "(e) To provide a reasonable remedy for common law causes of action by first party claimants; and
 "(f) To allow insurers to assert valid defenses and to defend fairly debatable claims without exposure to liability grossly disproportionate to the claims and amounts involved.
 "(2) Under no circumstances is it the intent nor shall this subtitle be construed to provide the basis for an independent duty, which the breach thereof would give rise to an independent tort.
 "(3) As used in this subtitle the following definitions shall apply:
 "(a) `First party claimant' means an individual, corporation, association, partnership or other legal entity asserting a right to payment under an insurance policy or insurance contract arising out of the occurrence of the contingency or loss covered by such policy or contract. A `first party claimant' includes, but is not limited to, the intended beneficiary of an uninsured motorist insurance policy.
 "(b) An `insurance policy or contract' means a policy or contract entered into by an insurer as defined in this Chapter or a substitute therefor entered into by a self-insured entity or employer.
 "(c) `Bad faith' means there must be an absence of a reasonable basis of denial of the insurance policy or contract benefits. The insurer's refusal to pay a fairly debatable claim does not constitute bad faith for purposes of this subtitle.
 "(4) If a first party claimant is adjudged to have been entitled to recovery according to the terms of the insurance contract under which a right of recovery is claimed in an amount in excess of that amount offered by the issuer of the insurance policy or contract, the court shall award the first party claimant a reasonable attorney fee.
 "(5) Should the issuer of the insurance policy or contract make a written offer of settlement to the first party claimant in an amount that is equal to or more than that which the first party claimant is ultimately adjudged to be entitled to recover, the first party claimant shall not recover attorneys fees incurred from the time the offer of settlement was communicated to the first party claimant. After litigation has commenced, the settlement offer shall be in the form contemplated and governed by the terms of Kentucky Rules of Civil Procedure.
 "(6) Upon being adjudged liable to the first party claimant, the issuer of the insurance policy or contract shall pay an additional penalty not to exceed twenty percent (20%) of the recovery to the extent it exceeds any amount offered in accordance with sub-section five (5) hereof if the court or jury finds that such defendant's refusal to pay the first party claimant according to the terms of the insurance policy or contract was in bad faith. But in no case shall such penalty be less than five hundred dollars ($500).
 "(7) The penalty imposed under this subtitle shall be the exclusive remedy for the refusal of the issuer of the insurance policy or contract to pay a first party claimant in the absence of good faith and such failure shall not give rise to an independent action in tort."